**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WEST WIND EXPRESS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10-cv-6263 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| OCCIDENTAL FIRE & CASUALTY | ) | |
| COMPANY OF NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this diversity case, Plaintiff West Wind Express filed a complaint against Defendant Occidental Fire & Casualty Company of North Carolina seeking a declaration that West Wind is not obligated to reimburse Occidental for payments it made to settle third-party claims following a December 2005 motor vehicle accident (Count I), as well as an order stating that Defendant's handling of the request for coverage was "unreasonable and vexatious" in violation of 215 ILCS 5/155, entitling West Wind to attorneys' fees and other statutory damages (Count II). The Court previously granted summary judgment to West Wind on Count I. [See 68.] Now before the Court is Occidental's motion for summary judgment [178] on Count II. For the reasons explained below, Occidental's motion [178] is granted.

**I.   Background**[1]

As was the case with the parties' summary judgment briefing on Count I, the facts here are relatively brief and undisputed. West Wind, a trucking company, purchased an insurance policy from Occidental, an insurer. That insurance policy contained an "MCS-90" endorsement,

---

[1] The Court takes the relevant facts from the parties' Local Rule 56.1 statements, construing the facts in the light most favorable to the nonmoving party—here, Plaintiff.

which is a common provision in insurance policies for trucking companies, designed to comply with regulations promulgated under the Motor Carrier Act of 1980.[2] The MCS-90 endorsement provides:

> In consideration of the premium stated in the policy to which this endorsement is attached, **[Occidental] agrees to pay**, within the limits of liability described herein, **any final judgment recovered against [West Wind]** for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by [West Wind] or elsewhere. * * * **[West Wind] agrees to reimburse [Occidental]** for any payment made by [Occidental] on account of any accident, claim or suit involving a breach of the terms of the policy, and **for any payment that [Occidental] would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement**.

(emphasis added).

On December 23, 2005, a truck displaying West Wind placards and operating-authority numbers was involved in an accident with another truck. Following the accident, three lawsuits were filed against West Wind (two in Oklahoma, one in Illinois). West Wind sought insurance coverage from Occidental for each of these lawsuits. In response to these claims, Occidental issued a series of letters stating that (a) Occidental was disclaiming (*i.e.*, denying) coverage because West Wind's vehicle in the accident was not an "owned vehicle" as required for coverage, but (b) because of the MCS-90 endorsement, Occidental could be required to indemnify Plaintiff for damages stemming from the accident, and (c) if so, Occidental would seek reimbursement from West Wind. [See 152-3, at 5–9 (Jan. 4, 2006), at 8–11 (Feb. 1, 2006), 12–13 (June 5, 2007), 14–17 (Dec. 12, 2008).] In Occidental's June 5 letter, it stated that while it had "no duty to make any payments unless or until there is a final judgment, * * * it could be

---

[2] "MCS-90" refers to the form prepared by the Federal Motor Carrier Safety Administration. See *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 873–74 (10th Cir. 2009).

prudent to resolve certain claims prior to a final judgment, thus saving money on the total settlement amounts and the expenses incurred," and therefore Occidental would "attempt to resolve the claim and lawsuit." [152-3, at 12.] In its December 12, 2008 letter, Occidental reiterated its strategy, identified the attorney it hired to defend West Wind, and noted that "this defense is being provided on a courtesy basis." [152-3, at 16.]

West Wind does not recall taking any action in response to Occidental's letters, and there is no evidence that West Wind expressed any disagreement with Occidental's plan while settlement discussions were ongoing. [183, ¶¶ 22, 25, 37, 39.] As such, despite its assertions that it was denying coverage for West Wind's claims, Occidental continued to pursue settlement of these matters, purportedly based on its duties under the MCS-90 endorsement. Occidental ultimately settled the three claims for $122,524.34, with the last settlement occurring in December 2009. The settlement payments were not made pursuant to a verdict, court order, or final judgment. Occidental sought reimbursement from West Wind for the settlement fees. After all three cases were settled, West Wind (for the first time) objected to the arrangement, arguing that it had no duty to reimburse Occidental because the monies spent were not pursuant to a "final judgment," as required to trigger its obligations under the MCS-90 endorsement. Unable to reach a resolution, West Wind filed this lawsuit on September 30, 2010, approximately nine months after the last case settled. In 2012, the Court resolved the dispute in West Wind's favor, relying on the holding in *Auto Owners Ins. Co. v. Munroe*, 614 F.3d 322 (7th Cir. 2010) that an MCS-90 endorsement is only triggered by a "final judgment." *West Wind Exp. v. Occidental Fire & Cas. of N. Carolina*, 2012 WL 3006409 (N.D. Ill. July 23, 2012).

In the only remaining count in West Wind's complaint (Count II), West Wind objects to Occidental's "ongoing and repeated demands for reimbursement," referring to them as

"vexatious and unreasonable," demonstrating "utter indifference and reckless disregard for Plaintiff's rights, interests, and financial welfare." [1, ¶¶ 26–27, 30.] West Wind alleges that Occidental's conduct violated 215 ILSC 5/155 of the Illinois Insurance Code, entitling it to statutory damages and attorneys' fees. Occidental has now moved for summary judgment on Count II.[3] [See 178.]

## II. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[3] Local Rule 7.1 says that briefs in support of or in opposition to any motion shall not exceed 15 pages without court approval, and briefs that exceed 15 pages must have a table of contents with the pages noted and a table of cases. L.R. 7.1. Both parties violated this rule. [See 182 (21 pages); 185 (16 pages).] In addition, West Wind violated Local Rule 5.2 by decreasing its margins below one inch on all sides. See L.R. 5.2(c)(2). The parties are advised to comply with the Local Rules on all future filings. To the extent that compliance is not possible, the parties should raise their concerns with the Court.

4

(1986)). Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chi.*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

The issue here is whether Occidental's conduct in handling West Wind's claims was "unreasonable and vexatious" so as to violate 215 ILCS 5/155 of the Illinois Insurance Code. That provision allows a court to assess statutory damages and attorneys' fees:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable * * *.

215 ILCS 5/155(1). "The Illinois legislature designed this provision to provide a remedy to 'insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured.'" *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) (quoting *Korte Constr. Corp. v. Am. States Ins.*, 750 N.E.2d 764, 771 (Ill. App. Ct. 2001)). "An insurer's actions are not vexatious and unreasonable if '(1) there is a bona fide dispute concerning the scope and application of

5

insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law.'" *TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013) (quotation omitted).

As an initial matter, "Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy." *First Ins. Funding Corp.*, 284 F.3d at 807; see also *Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 857 (Ill. App. Ct. 2000) ("A[n] [insurer] cannot be liable for section 155 relief where no benefits are owed."). Here, the allegedly violative actions are Occidental's attempts *to seek reimbursement* for claims *that it paid* pursuant to its assumed duties under the MCS-90 endorsement. Arguably, West Wind's claim falls outside of the scope of section 155.[4] See *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) ("Because this statute is penal in nature its provisions must be strictly construed." (internal quotation marks omitted)).

Likely motivated by its post-hoc recognition of this threshold requirement, West Wind now argues that "it is proper for this Court to determine whether Occidental's initial coverage determination was correct at the outset." [182, at 12.] While the Court understands West Wind's desire to sneak this issue into the case, that ship has sailed. Whether Occidental should have covered the three claims is not an issue before the Court, nor is it a determination that the Court must make to resolve Count II. The parties' dispute has nothing to do with whether the underlying claims are covered under the policy, and thus Occidental's allegedly "vexatious and

---

[4] The Court could imagine the Illinois Supreme Court interpreting 215 ILCS 5/155 broadly to include instances like this, where there is no dispute over claim coverage, but rather a dispute regarding an insurer's right to reimbursement under a policy. After all, such a dispute could "result[] from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured." *Korte Constr. Corp. v. Am. States Ins.*, 750 N.E.2d 764, 771 (Ill. App. Ct. 2001). However, West Wind has not provided any support for such a broad reading. In any event, the Court need not resolve this issue here because, as explained below, West Wind's claim fails regardless of whether section 155 applies.

6

unreasonable" actions have nothing to do with its withholding of benefits (as required to trigger section 155). Even if West Wind could establish that Occidental's denial of coverage was improper, that does not change the fact that West Wind's only objections relate to Occidental's actions in seeking reimbursement. West Wind cannot shoehorn its claim into section 155 in this manner; West Wind simply is not eligible for relief under section 155.

But even if West Wind's claim were to fall within the purview of section 155, Occidental's actions in seeking reimbursement were not "unreasonable and vexatious." In assessing whether an insurer's conduct was "unreasonable and vexatious," a court must consider the totality of the circumstances, and an insurer can avoid liability by demonstrating that a "bona fide dispute" existing about coverage. See *TKK USA*, 727 F.3d at 793–94; *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003). A bona fide dispute is one that is "[r]eal, genuine, and not feigned." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1087 (7th Cir. 2007)). Occidental argues that there was a bona fide dispute over its right to reimbursement because (a) despite multiple letters spanning more than two years, West Wind never objected to Occidental's express denial of coverage or its claims that it would seek reimbursement for monies spent pursuant to the MCS-90 endorsement, and (b) even though the Court found the Seventh Circuit's opinion in *Auto Owners Ins. Co. v. Munroe*, 614 F.3d 322 (7th Cir. 2010) to be dispositive on Count I, that opinion was decided two months before the case was filed, and regardless, there is a circuit split on the issue, demonstrating the merits of both sides of the argument.

West Wind argues that its silence during the process is irrelevant, and that Occidental's arguments to the contrary are "absurd." The Court disagrees. While West Wind's silence doesn't bear directly on whether there was a bona fide legal dispute, its tacit approval of Occidental's

7

legal position over (at least) two years casts doubt on West Wind's argument that Occidental was pursuing a vexatious, bad-faith strategy that entire time. Specifically, over a two-year period, Occidental repeatedly told West Wind that it was denying coverage on all claims, and that if it had to pay anything because of the MCS-90 endorsement, it would seek reimbursement. If West Wind disagreed with Occidental's denial of coverage or its associated reading of the MCS-90 endorsement, one would expect some sort of response from West Wind. Instead, West Wind sat silent, allowing Occidental to assume the defense despite its written representations stating its position on coverage. West Wind is a sophisticated party, and its silence over a two-year span implies a tacit approval of Occidental's reading of the contract. Even viewing the facts in the light most favorable to West Wind, its silence cannot be read as a form of disagreement, which weakens West Wind's current position that Occidental was dead wrong from the outset.

Conveniently for West Wind, it was only after Occidental settled all three claims and paid the settlement fees that West Wind spoke up, seemingly surprised that Occidental was now seeking reimbursement for these settlements despite its repeated assurances that it would do so. Again, even construing the facts in the light most favorable to West Wind, Occidental's actions amount to (at most) bad business, not bad faith. From Occidental's perspective, it expressly denied coverage of all claims (a position that West Wind has not, until now, contested), it hired an attorney and defended West Wind's claims anyway (purportedly assuming that it had a duty to do so under the MCS-90 endorsement), it paid $122,524.34 in settlement fees (again, assuming that it would be reimbursed for those fees per the MCS-90 endorsement), and because of a Seventh Circuit case that came out years later, it got stuck with the bill. If Occidental were acting in bad faith that entire time, why would it have assumed the defense of claims that it expressly disclaimed? And what leverage did Occidental gain by fronting the six-figure

settlement fees? See *West Wind*, 2012 WL 3006409, at *4 n.4 ("Occidental may have put the cart before the horse, taking on unnecessary financial obligations."). Viewing the totality of the circumstances, while Occidental's driver's-seat, take-charge approach to West Wind's claims was ultimately a costly one and quite possibly a poor business decision, it hardly seems vexatious, especially in comparison to West Wind's back-seat, hands-off approach that led to full coverage of arguably uncovered claims. See *id.* (acknowledging that the Court's ruling on Count I "may be viewed as providing West Wind with a wind-fall").

West Wind also argues that Occidental's reliance on out-of-circuit law to support its position that there was a bona fide dispute is unavailing both because of the non-binding nature of that law and because Occidental (potentially) failed to conduct any legal analysis on the issue until the parties' dispute arose. Again, the Court disagrees. Even if Occidental acted unaware of the legal landscape on MCS-90 endorsements, there is no evidence indicating that Occidental acted vexatiously or in bad faith in doing so (*e.g.*, Occidental was not pursuing an agenda knowing it to be contrary to law). To the contrary, up until the Seventh Circuit issued *Munroe* in July of 2010, the leading opinion on the issue was *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667 (5th Cir. 2001), which favored Occidental's position on the MCS-90 endorsement. And so regardless of whether Occidental acted with knowledge of this Fifth Circuit opinion, it was still on the right side of the law at the time. True, the tables turned once the Seventh Circuit released *Munroe* (two months before West Wind filed this lawsuit and 16 months before West Wind filed for summary judgment on Count I). But in opposing West Wind's motion for summary judgment on Count I, Occidental argued that the Fifth Circuit's case was still the more on-point decision, and Occidental sought to distinguish *Munroe*, arguing that it was not applicable under the particular facts of this case. [See 54, at 7.] While the Court

ultimately rejected Occidental's arguments, that does not make them vexatious. The Seventh Circuit's *Munroe* opinion was new and unvetted in other circuits, and Occidental's arguments for a narrow interpretation of that case were neither misleading nor otherwise in bad faith. See, *e.g.*, *A.O. Smith Corp. v. Lewis, Overbeck & Furman*, 979 F.2d 546, 551 (7th Cir. 1992) (noting that a party is entitled "to argue in good faith for a change in the law"). While Occidental's position in light of *Munroe* may be near the bottom of the bona-fide-dispute barrel, it certainly is not unreasonable and vexatious. See *Medical Protective Co. v. Kim*, 507 F.3d 1076, 1087 (7th Cir. 2007) ("[A]lthough [defendant] was unsuccessful, this was a bona fide dispute * * *.").

Viewing the totality of the circumstances in the light most favorable to West Wind, there is no evidence that Occidental's actions—however ill-advised and ultimately costly—were borne out of vexation or bad faith.[5] Occidental repeatedly denied coverage for West Wind's claims, but took charge of the situation anyway, coordinating the successful settlement of all three claims. While a later-issued Seventh Circuit opinion spelled the end of Occidental's efforts to seek reimbursement of those settlement fees, Occidental's position (both before and after *Munroe*) has always been a reasonable one; at no point did Occidental's actions reflect those of a bad-faith actor. West Wind's allegations, even if true, at most establish an incompetent actor,[6] not a

---

[5] West Wind points to the fact that Magistrate Judge Mason granted two of its motions for sanctions based on Occidental's failure to comply with the rules of discovery. [See 116, 155.] Reflecting on the docket entries in this case, the parties clearly disagreed a great deal throughout the discovery process, filing multiple motions for sanctions. [See 104, 117, 123, 143.] The Court has considered the allegations in these motions in conducting its totality-of-the-circumstances analysis. See *TKK USA*, 727 F.3d at 793 (7th Cir. 2013) ("Section 155 of the Illinois Insurance Code allows an insured to recover attorney fees when * * * the insurer behaves vexatiously and unreasonably during the course of coverage litigation." (citations omitted)).

[6] West Wind points to the testimony of insurance broker Bob Beck, who claimed that the policy that Occidental issued to West Wind did not comply with the insurance that West Wind requested. West Wind claims that this testimony raises "significant questions" in this case as to "a) why the policy was even issued in the manner that it was, [and] b) why Occidental paid other claims for owner operators but then changed its position and suddenly decided that owner operators were not covered." [182, at 17.] The Court cannot make heads or tails of this argument, which seems to imply that Occidental is an unskilled

vexatious one. For these reasons, attorneys' fees and statutory sanctions under section 155 are not warranted, and Defendant Occidental's motion for summary judgment on Count II is granted.

## IV.    Conclusion

For the foregoing reasons, Defendant Occidental's motion for summary judgment on Count II [178] is granted. Judgment will be entered for Defendant on Count II. Because both counts of Plaintiff's complaint have now been resolved, the Court will enter an order terminating this case.

Dated: September 18, 2015     _____
                                Robert M. Dow, Jr.
                                United States District Judge

---

insurer. Regardless, it says nothing about whether Occidental acted vexatiously or in bad faith in seeking reimbursement from West Wind, and thus is irrelevant for purposes of this motion.